<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
MARCUS THORNTON,               :
                               :  Civil Action No. 06-4727 (RBK)
              Plaintiff,       :
                               :
       v.                      :     OPINION
                               :
JOHN NASH, et al.,             :
                               :
              Defendants.      :
```

**APPEARANCES:**

    MARCUS THORNTON, Plaintiff <u>pro se</u>
    #53649-083
    FCI Fort Dix
    P.O. Box 7000/ West 5852
    Fort Dix, New Jersey 08640

**KUGLER**, District Judge

    Plaintiff Marcus Thornton ("Thornton"), a federal prisoner currently confined at the Federal Correctional Institution at Fort Dix, New Jersey ("FCI Fort Dix"), at the time he filed his Complaint, seeks to bring this action <u>in forma pauperis</u>, pursuant to <u>Bivens v. Six Unknown named Agents of Fed. Bureau of Narcotics</u>,403 U.S. 388 (1971), alleging violations of his constitutional rights.  Plaintiff initially submitted his Complaint without a complete application to proceed <u>in forma pauperis</u> ("IFP").  On October 13, 2006, this Court issued an Order denying Thornton's IFP application without prejudice, and administratively terminating the action.  The Order also gave

Dockets.Justia.com

plaintiff thirty (30) days to submit a complete IFP application with his prison account statement and affidavit of indigency if he wished to re-open his case.

On November 9, 2006, Thornton submitted an incomplete IFP application with a motion to amend his Complaint, a request for appointment of counsel, a request for documents, and interrogatories. On November 22, 2006, this Court issued another Order, reminding plaintiff that he must submit his six-month prison account statement within 30 days if he wished to have his case re-opened. On December 26, 2006, Thornton requested an extension of time to submit his prison account statement. The Court granted the request on January 12, 2007. Thornton filed his six-month prison account statement on January 24, 2007.

It appearing that plaintiff qualifies to proceed <u>in forma pauperis</u>, the Court will grant plaintiff's application to proceed as an indigent and will direct the Clerk of the Court to re-open this matter, and file the Complaint without prepayment of fees.

Having reviewed the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief, the Court concludes that this action should proceed in part.

## I.  <u>BACKGROUND</u>

Thornton submits a Complaint alleging several different claims against 34 name defendants.  His Complaint makes the following allegations:

First, Thornton complains that, on June 18, 2002, a detainer was lodged against him by a state court, which affected his custody status and ability to transfer or participate in programs at a lower security institution.  He claims that the defendants, Unit Manager T.K. Rhodes; Case Manager Perkins; Counselor J. Dixon; and Case Management Coordinator Robert Donahue failed to remove the detainer even though plaintiff had written to the state agency to inquire about the "future disposition" of the detainer.  (Complaint, ¶¶ 36-37).

Next, Thornton alleges that, on or about August 10, 2003, he was being harassed by Food Service Supervisor M. Kent.  Thornton had complained about this harassment and had asked that he be removed from food service detail.  In particular, he brought his complaint to the attention of Food Service Assistant Administrators Prater, Kroeger, and Jones, who allegedly did nothing.  (Compl., ¶ 39).

On September 2, 2003, plaintiff states that he was "maliciously assaulted" by correctional officers and staff. Thornton alleges that he was six feet away from Food Service Supervisor Kent, when Kent pointed to plaintiff and the

correctional officers rushed at plaintiff and ordered him to face
the wall.  Thornton says that he had complied, but the officers
shoved him into the wall, punched him in his lower back, and
twisted his arm into handcuffs without any provocation or
resistance by plaintiff.  Thornton alleges that he was slammed
face down on the ground, kicked, stepped and stomped on by
defendant officers.  He also states that "immense pressure [was]
applied to his neck and jawbone region from being pinned down by
the weight of an officer's knee." (Compl., ¶ 40-41).  While
plaintiff was pinned down, the officers then put their hands in
his pants and underwear and repeatedly grabbed, clawed and pulled
plaintiff's groin and buttocks area.  The officers then picked
him up by his neck and pushed plaintiff's head into the wall.
Thornton was told to stand facing the wall while the officers
took turns bending his wrists while handcuffed.  Thornton states
that this abuse lasted at least two hours.  He complained to
Nurse Jane Doe about his injuries, but she offered no medical
treatment.  Other inmates allegedly gave statements to the
Lieutenant on duty about the assault on Thornton.  (Compl., ¶¶
42-44).

While Thornton was in the special housing unit ("SHU") at
FCI Fort Dix, on or about September 3, 2003, he alleges that
defendant, Warden DeRosa, approached plaintiff and threatened
him.  Plaintiff states that DeRosa harassed him by kicking at

plaintiff's cell door and telling him that he would remain in the SHU for a very long time.  (Compl., ¶ 45).

Two years later, on or about September 2 or 3, 2005, Thornton alleges that he attempted to bring an excessive force and sexual assault claim to the attention of the administration regarding the event that occurred on September 2, 2003.  Thornton states that he spoke to Warden DeRosa, Attorney Advisor Tara Moran, Lt. Marx, S.I.A. Odell, Lt. Nesbitt, and Regional Director Scott Dodrill, but received no assistance.  (Compl., ¶ 46).

Thornton next complains about the disciplinary proceeding brought against him as a result of the September 2, 2003 incident.  Thornton states that he was brought before the Unit Disciplinary Committee ("UDC") on or about October 24, 2003. Counselor Dixson acted as the Chairman of the UDC and Case Manager Perkins was present.  Thornton alleges that he was not allowed to make corrections to his statements that had been altered and were inaccurate.[1]  He also claims that he was denied

_____

[1]  Thornton alleges that Lt. Anderson delivered the incident report to plaintiff on September 26, 2003 regarding the incident of September 2, 2003.  Plaintiff claims that Anderson altered plaintiff's statements and would not correct the inaccuracies even though plaintiff brought them to Anderson's attention. (Compl., ¶ 47).  The Court notes that there appears to be a typographical error in the Complaint at ¶ 47 concerning the date when Lt. Anderson brought the incident report to Thornton.  Given the chronology of events being explained by plaintiff, the Court presumes that September 26, 2003 is the date plaintiff intended to cite rather than the date September 26, 2006 as typed on the Complaint.

the opportunity to review the evidence against him (other than the incident report) to prepare for his hearing.  Thornton was later brought before the disciplinary hearing officer ("DHO"), Morten, where he was again denied the opportunity to review evidence or present witnesses.  Plaintiff claims the hearing was extremely biased against him.  (Compl., ¶¶ 47-49).

Thornton was sent to the SHU where he was subjected to temperatures of 60 degrees inside while the temperature was 20 degrees outside.  He claims he was cold and was not given warm clothing for protection from the cold.  He also claims that he was denied an educational transfer after he was released from SHU.  (Compl., ¶¶ 49-50).

Two years later, on September 12, 2005, Thornton alleges that he was stopped from exiting the Food Service Facility at FCI Fort Dix in the east compound by C.M.C. Donahue and Lt. Hunter. Both officers allegedly threatened and sexually harassed plaintiff.  Donahue confronted Thornton about what plaintiff had in his pockets.  Thornton replied he had no contraband, but Donahue violently shoved his hand in plaintiff's pockets and pulled plaintiff's jacket up and away from his body.  Donahue then told Thornton to step outside and put his hands on the wall, while Donahue proceeded to search plaintiff again.  Plaintiff states that Donahue repeatedly grabbed his buttocks in an offensive and inappropriate manner, even after plaintiff told

6

Donahue that it made him feel uncomfortable.  The pat-down search continued and Thornton alleges nothing was found.  He complained to Hunter and Donahue about the search, but was told to "shut-up" or plaintiff would be taken to SHU.  Thornton was then handcuffed and dragged down the open compound.  (Compl., ¶¶ 51-54).

Thornton alleges that, on September 13, 2005, both Donahue and Hunter prepared and submitted an incident report, which allegedly contained false accusations against plaintiff. Plaintiff appeared before the UDC and Chairman J. Riser, a Case Manager, purportedly told plaintiff that he agreed with Donahue's report and wrote down a false record of plaintiff's statements. Thornton alleges that Riser admitted that he was fabricating plaintiff's statements.  He also alleges that Riser denied plaintiff his request for an administrative remedy form to appeal the UDC decision, and denied plaintiff's right to be heard before an impartial fact-finding body.  (Compl., ¶ 55-57).

Finally, plaintiff claims that, on or about March 18, 2006, he was harassed and threatened by Riser in retaliation for plaintiff filing administrative remedies against Riser, Donahue and other staff for incidents that occurred on September 2, 2003 and September 12, 2005.  (Compl., ¶ 58).

Thornton asserts that the defendants have violated his First, Fifth, Sixth, and Eighth Amendment rights by their actions against him.  The named defendants are: Warden C.J. DeRosa;

Warden John Nash; DHO Steven Morten; Special Agent (S.I.A.)
Odell; Attorney Advisor/Administrative Remedy Coordinator Tarra
Moran; Lt. Marx; Lt. Anderson; Lt. T.M. Nesbitt; Lt. Hunter; Food
Service Assistant Administrator Prater; Food Service Ass't. Adm.
Kroeger; Food Service Ass't. Adm. Jones; Case Management
Coordinator Robert Donahue; Unit Manager T.K. Rhodes; Case
Manager Perkins; Case Manager Jim Riser; Counselor J. Dixson;
Food Service Supervisor M. Kent; Lt. John Doe 1 and 2;
Correctional Officers John Doe 1-8; Nurse/Physical Aid Jane Doe;
and the United States of America.[2]

Thornton seeks a declaratory judgment that these defendants
violated his constitutional rights, injunctive relief to prevent
continued or future retaliatory actions by defendants, and
compensatory and punitive money damages in excess of $ 2 million.

II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-
134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996),
requires a district court to review a complaint in a civil action
in which a prisoner is proceeding in forma pauperis or seeks

_____

[2]  Plaintiff also named Northeast Regional Director Scott
Dodrill, Regional Designator Administrator E.L. Tatum, Jr., and
Administrator of Inmate Appeals Harrell Watts, as defendants in
this matter.  However, plaintiff submitted a notice of voluntary
dismissal as to these three defendants on or about January 26,
2007.  The Court signed the Order on January 30, 2007, dismissing
defendants Dodrill, Tatum, and Watts from this action.  (Docket
Entry No. 8).

redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua</u> <u>sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981). However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)).

III.  <u>ANALYSIS</u>

A.  <u>Bivens Claim</u>

Thornton brings this action pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971). In <u>Bivens</u>, the Supreme Court held that one is entitled to recover monetary damages for injuries suffered as a result of federal officials' violations of the Fourth Amendment. In doing so, the Supreme Court created a new tort as it applied to federal

officers, and a federal counterpart to the remedy created by 42 U.S.C. § 1983.[3]  The Supreme Court has also implied <u>Bivens</u> damages remedies directly under the Eighth Amendment, <u>see</u> <u>Carlson v. Green</u>, 446 U.S. 14 (1980), and the Fifth Amendment, <u>see</u> <u>Davis v. Passman</u>, 442 U.S. 228 (1979).

In order to state a claim under <u>Bivens</u>, a claimant must show (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law.  <u>See</u> <u>Mahoney v. Nat'l Org. For Women</u>, 681 F. Supp. 129, 132 (D. Conn. 1987)(citing <u>Flagg Brothers, Inc. v. Brooks</u>, 436 U.S. 149, 155-56 (1978)).

The United States has sovereign immunity except where it consents to be sued.  <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983).  In the absence of such a waiver of immunity, Thornton cannot proceed in an action for damages against the United States or an agency of the federal government for alleged deprivation of a constitutional right, <u>see</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 484-87 (1994), or against any of the individual

---

[3]  <u>Bivens</u> actions are simply the federal counterpart to § 1983 actions brought against state officials who violate federal constitutional or statutory rights.  <u>Egervary v. Young</u>, 366 F.3d 238, 246 (3d Cir. 2004), <u>cert</u>. <u>denied</u>, 543 U.S. 1049 (2005).  Both are designed to provide redress for constitutional violations.  Thus, while the two bodies of law are not "precisely parallel", there is a "general trend" to incorporate § 1983 law into <u>Bivens</u> suits.  <u>Chin v. Bowen</u>, 833 F.2d 21, 24 (2d Cir. 1987)).

defendants in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 166 (1985) (a suit against a government officer in his or her official capacity is a suit against the government). Therefore, the Complaint is dismissed in its entirety against the United States of America.

However, a Bivens-type action seeking damages from the remaining defendants is an action against them in their individual capacities only.  See, e.g., Armstrong v. Sears, 33 F.3d 182, 185 (2d Cir. 1994); Johnston v. Horne, 875 F.2d 1415, 1424 (9th Cir. 1989).  Here, Thornton is seeking to recover money damages from federal officials acting in their individual capacities.  Accordingly, the Court will review the claims asserted by plaintiff to determine whether the Complaint states a cognizable claim sufficient to withstand summary dismissal at this time pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

B.  September 2, 2003 Excessive Force and Sexual Assault Claim

Thornton asserts that he was "maliciously assaulted" on September 2, 2003 by defendant Kent and other John Doe correctional officers.  He alleges that he was shoved into a wall, punched, slammed to the ground, kicked, stepped and stomped on by the defendants without legitimate reason or provocation. He also alleges that the defendants sexually assaulted him by repeatedly grabbing, clawing and pulling at his groin and buttocks.

12

Excessive force cases fall into three categories: (1) those involving the use of force to effectuate an arrest; (2) those against a person in police custody and/or pretrial detention; and (3) those involving the use of force against a convicted person. Graham v. Connor, 490 U.S. 386, 394 (1989). The Fourth Amendment standard is applied to those cases specifically directed to the method of arrest and seizure. Custody and detention cases are subject to the Fourteenth Amendment substantive due process analysis; and cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment. Id. at 392-394. As a convicted prisoner at the time of the September 2, 2003 incident, Thornton's excessive force claim is examined under the Eighth Amendment standard.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments: they cannot be 'cruel and unusual.'" Rhodes v. Chapman, 452 U.S. 337, 345 (1981). The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Id. at 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101

(1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  <u>See</u> <u>Farmer</u>, 511 U.S. at 834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes</u>, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to

14

cause harm, contemporary standards of decency always are violated." Id. at 9. In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than de minimis force is used. Id. at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not de minimis for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. at 321). Thus, not all use of force is "excessive" and will give rise to the level of a constitutional violation. See Hudson, 503 U.S. at 9 (it is clear that not "every malevolent touch by a prison guard gives rise to a federal cause of action"). Therefore, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id. at 9-10.

Here, Thornton alleges that defendants assaulted him, but does not assert that he sustained any serious injury. However, the extent of plaintiff's injuries, even if the injuries are <u>de minimis</u>, do not drive the Eighth Amendment analysis. <u>See</u> <u>Smith v. Mensinger</u>, 293 F.3d 641, 648 (3d Cir. 2002). Instead, "the Eighth Amendment analysis must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." <u>Id</u>. Thus, the pivotal inquiry in reviewing an excessive force claim is whether the force was applied maliciously and sadistically to cause harm. <u>Id</u>., 293 F.3d at 649; <u>Brooks</u>, 204 F.3d at 106. Otherwise, an inmate "could constitutionally be attacked for the sole purpose of causing pain as long as the blows were inflicted in a manner that resulted" in injuries that were <u>de minimis</u>. <u>Id</u>.

In this case, Thornton alleges facts sufficient to suggest that defendants exhibited malicious and sadistic conduct intended to cause plaintiff pain. Such conduct, if true, is "repugnant to the conscience of mankind" absent extraordinary circumstances necessary to justify that kind of force. <u>Hudson</u>, 503 U.S. at 10. Thus, this Court would be inclined to allow this claim to proceed at this time but for the fact that it is now time-barred.

A court may dismiss a complaint for failure to state a claim, based on a time-bar, where "the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations." Bethel v. Jendoco Construction Corp., 570 F.2d 1168, 1174 (3d Cir. 1978) (citation omitted). Although the statute of limitations is an affirmative defense which may be waived by the defendant, it is appropriate to dismiss sua sponte under 28 U.S.C. § 1915(e)(2) a pro se civil rights claim whose untimeliness is apparent from the face of the Complaint. See, e.g., Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (holding, under former § 1915(d) in forma pauperis provisions, that sua sponte dismissal prior to service of an untimely claim is appropriate since such a claim "is based on an indisputably meritless legal theory"); Hall v. Geary County Bd. of County Comm'rs, 2001 WL 694082 (10th Cir. June 12, 2001) (unpub.) (applying Pino to current § 1915(e)); Rounds v. Baker, 141 F.3d 1170 (8th Cir. 1998)(unpub.); Johnstone v. United States, 980 F.Supp. 148 (E.D. Pa. 1997) (applying Pino to current § 1915(e)). The requirements of 28 U.S.C. § 1915A (governing civil actions in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity) parallels the provision in 28 U.S.C. § 1915(e).

Congress has not legislated a statute of limitations for Bivens actions. Napier v. 30 or More Unidentified Fed. Agents, 855 F.2d 1080, 1087 n.3 (3d Cir. 1988). However, the Third Circuit has held that the same statute of limitations applies to § 1983 and Bivens claims. See Mishra v. Fox, 197 Fed. Appx. 167,

2006 WL 2493135, at *1 (3d Cir. 2006)(citing Napier, 855 F.2d at 1087); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993). Civil rights claims, such as those presented here, are best characterized as personal injury actions and are governed by the applicable state's statute of limitations for personal injury actions.  See Wilson v. Garcia, 471 U.S. 261, 280 (1985). Accordingly, New Jersey's two-year limitations period on personal injury actions, N.J. Stat. Ann. § 2A:14-2, governs Thornton's Eighth Amendment excessive force claim.  See Montgomery v. DeSimone, 159 F.3d 120, 126 & n.4 (3d Cir. 1998); Cito v. Bridgewater Township Police Dept., 892 F.2d 23, 25 (3d Cir. 1989).  Under N.J. Stat. Ann. § 2A:14-2, an action for an injury to the person caused by a wrongful act, neglect, or default must be commenced within two years of accrual of the cause of action. Cito, 892 F.2d at 25; accord Brown v. Foley, 810 F.2d 55, 56 (3d Cir. 1987).  Unless their full application would defeat the goals of the federal statute at issue, courts should not unravel states' interrelated limitations provisions regarding tolling, revival, and questions of application.  Wilson v. Garcia, 471 U.S. at 269.

New Jersey statutes set forth certain bases for "statutory tolling."  See, e.g., N.J.S.A. § 2A:14-21 (detailing tolling because of minority or insanity); N.J.S.A. § 2A 14-22 (detailing

18

tolling because of nonresidency of persons liable).  New Jersey law permits "equitable tolling" where "the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass," or where a plaintiff has "in some extraordinary way" been prevented from asserting his rights, or where a plaintiff has timely asserted his rights mistakenly by either defective pleading or in the wrong forum. See Freeman v. State, 347 N.J. Super. 11, 31 (citations omitted), certif. denied, 172 N.J. 178 (2002).  "However, absent a showing of intentional inducement or trickery by a defendant, the doctrine of equitable tolling should be applied sparingly and only in the rare situation where it is demanded by sound legal principles as well as the interests of justice."  Id.

When state tolling rules contradict federal law or policy, in certain limited circumstances, federal courts can turn to federal tolling doctrine.  See Lake v. Arnold, 232 F.3d 360, 370 (3d Cir. 2000).  Under federal law, equitable tolling is appropriate in three general scenarios:

> (1) where a defendant actively misleads a plaintiff with respect to her cause of action; (2) where the plaintiff has been prevented from asserting her claim as a result of other extraordinary circumstances; or (3) where the plaintiff asserts her claims in a timely manner but has done so in the wrong forum.

Id. n.9.

Here, Thornton's claims of excessive force and sexual assault accrued on the date of the incident, September 2, 2003.[4] Thornton's Complaint is dated September 16, 2006, and was received by the Clerk's Office on or about October 2, 2006, more than three years after the incident occurred. Thornton fails to show facts or extraordinary circumstances that would permit statutory or equitable tolling under either New Jersey or federal law.[5] Thus, the Eighth Amendment excessive force and sexual

---

[4] A claim accrues as soon as the injured party "knew or had reason to know of the injury that constitutes the basis of this action." Oshiver v. Levin Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 (3d Cir. 1994). "Plaintiff's actual knowledge is irrelevant. Rather, the question is whether the knowledge was known, or through reasonable diligence, knowable. Moreover, the claim accrues upon knowledge of the actual injury, not that the injury constitutes a legal wrong." Fassnacht v. United States, 1996 WL 41621 (E.D. Pa. Feb. 2, 1996) (citing Oshiver, 38 F.3d at 1386).

[5] The Court acknowledges that Thornton is attempting to argue that the limitations period should be tolled because defendants DeRosa, Moran, Lt. Marx, Special Agent Odell, and Lt. Nesbitt did not give plaintiff any assistance on September 2 or 3, 2005, when plaintiff tried to file an administrative grievance about the incident that occurred two years prior to his attempted grievance. It appears that Thornton is suggesting that the defendants' inaction on September 2, 2005 constitutes a "continuing wrong" that would toll the statute of limitations under the "continuing violations" doctrine. "Under this doctrine, a federal cause of action based upon the defendant's continuing conduct is timely provided that the last act of that continuing conduct is within the period for the commencement of an action specified by the statute of limitations." Sameric Corp. of Delaware, Inc. v. City of Philadelphia, 142 F.3d 582, 599 (3d Cir. 1998). Here, however, Thornton alleges no ongoing violations by the defendants to constitute a continuing wrong. Plaintiff's attempt to file an administrative grievance on September 2, 2005 only shows that plaintiff was aware that he had a potential excessive force claim at the time it occurred on

assault claim, which accrued on September 2, 2003, is time-barred
and will be dismissed with prejudice.[6]

Likewise, Thornton's claims alleging verbal harassment by
defendant Kent on August 10, 2003, and the inaction by defendants
Prater, Kroeger, and Jones to stop the harassment are time-barred
and should be dismissed, as are plaintiff's claims against Warden
DeRosa for allegedly harassing and threatening plaintiff at the
SHU on September 3, 2003, defendant Nurse Jane Doe's alleged
failure to provide medical care on September 2, 2003, and the
conditions of plaintiff's confinement in SHU in September 2003.[7]

---

September 2, 2003. Further, the next act of alleged excessive
force (on September 12, 2005) did not occur until more than two
years after the first act (September 2, 2003), and has little or
no nexus to the first act to constitute an ongoing or continuous
violations claim.

[6] Thornton also fails to show that he was prevented by the
defendants, in some extraordinary way, from pursuing his claim in
a timely manner.  The fact of the assault and plaintiff's
immediate knowledge that he was injured by consequence of the
assault were sufficient for plaintiff to know he had a claim.
There was no suggestion that information was purposely withheld
from plaintiff.

[7] Alternatively, the verbal harassment claims against
defendants Kent and DeRosa should be dismissed for failure to
state a cognizable claim of constitutional magnitude.  Generally,
mere verbal harassment does not give rise to a constitutional
violation.  See McBride v. Deer, 240 F.3d 1287, 1291 n.3 (10th
Cir. 2001)(taunts and threats are not an Eighth Amendment
violation);  Oltarzewski v. Ruggiero, 830 F.2d 136 (9th Cir.
1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d 327, 342
(S.D.N.Y. 2000)(verbal harassment does not violate inmate's
constitutional rights); Prisoners' Legal Ass'n v. Roberson, 822
F. Supp. 185, 187-189 & n.3 (D.N.J. 1993)(corrections officer's
use of racial slurs did not amount to constitutional violation);;
Murray v. Woodburn, 809 F. Supp. 383 (E.D. Pa. 1993); Douglas v.

21

C.  <u>State Detainer Claim</u>

Thornton also alleges that a state court lodged a detainer against him on June 18, 2002, which has affected plaintiff's custody status and ability to transfer or participate in programs at a lower security institution.  In particular, Thornton claims that defendants have refused to move him to a lower security institution, or admit him in certain programs because of the state detainer.

A federal prisoner does not have a constitutionally protected interest in his classification status in the federal prison system.  <u>See</u> <u>Moody v. Dagget</u>, 429 U.S. 78, 88 n. 9 (1976)(federal inmates have no legitimate statutory or

_____

<u>Marino</u>, 684 F. Supp. 395 (D.N.J. 1988).  <u>See</u> <u>also</u> <u>Shabazz v. Cole</u>, 69 F. Supp.2d 177, 200-01 (D. Mass. 1999)("without even a suggestion of physical injury, [defendants'] verbal abuse and racial epithets, although continuing for a long period of time, fall short of conscience shocking conduct"); <u>Wright v. Santoro</u>, 714 F. Supp. 665, 667 (S.D.N.Y. 1989), <u>aff'd</u>, 891 F.2d 278 (2d Cir. 1989); <u>Knop v. Johnson</u>, 667 F. Supp. 467 (W.D. Mich. 1987), <u>appeal</u> <u>dismissed</u>, 841 F.2d 1126 (6th Cir. 1988).  Allegations that prison personnel have used threatening language and gestures also are not cognizable claims under § 1983.  <u>Collins v. Cundy</u>, 603 F.2d 825 (10th Cir. 1979) (defendant laughed at prisoner and threatened to hang him).

The conditions of confinement claim while plaintiff was in SHU does not state a claim because his allegation of cold, without more, for the short period of time plaintiff spent in SHU, does not give rise to an Eighth Amendment conditions of confinement claim.  Thornton fails to allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to plaintiff's health or safety.  <u>See</u> <u>Wilson v. Seiter</u>, 501 U.S. 294, 305 (1991); <u>Nami v. Fauver</u>, 82 F.3d 63, 67 (3d Cir. 1996).

constitutional interest in classification status); see also Olim
v. Wakinekona, 461 U.S. 238, 245 (1983)(in general, an inmate
does not have a liberty interest in assignment to a particular
institution or to a particular security classification); Meachum
v. Fano, 427 U.S. 215, 224-25 (1976); Montayne v. Haymes, 427
U.S. 236, 243 (1976).  In particular, the Supreme Court noted
that prison classification and eligibility for rehabilitative
programs in the federal prison system are matters delegated by
Congress to the "full discretion" of federal prison officials and
thus implicate "no legitimate statutory or constitutional
entitlement sufficient to invoke due process." Moody, 429 U.S.
at 88 n.9.  So long as the conditions or degree of confinement to
which the prisoner is subjected are within the sentence imposed
upon him and is not otherwise violative of the Constitution, the
Due Process Clause does not in itself subject an inmate's
treatment by prison authorities to judicial oversight. See
Sandin v. Connor, 515 U.S. 472, 484-86 (1995)(holding that a
liberty interest is implicated only where the action creates
"atypical and significant hardship on the inmate in relation to
the ordinary incidents of prison life" or creates a "major
disruption in his environment"); Kentucky Dept. of Corrections v.
Thompson, 490 U.S. 454, 463 (1989)(holding that a liberty
interest arises only where a statute or regulation uses
"explicitly mandatory language" that instructs the decision-maker

23

to reach a specific result if certain criteria are met); <u>Walker v. Hughes</u>, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges.").

Therefore, because the BOP classification procedure is within the discretion of the Attorney General as delegated to the Director of the BOP, <u>see</u> 18 U.S.C. § 4081; 28 C.F.R. § 0.96, Thornton has no legitimate constitutional basis to attack his classification level or custody status unless he can show that the BOP's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(a); <u>Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837, 844 (1984).  As a threshold matter, it is clear that the BOP's decision to classify plaintiff based on a state court detainer lodged against him is not arbitrary or capricious. Further, the defendants did not issue the detainer, but are bound to abide by the detainer issued by the state until plaintiff is released into the State's custody.  Finally, to the extent Thornton challenges the detainer, his appropriate avenue for

24

relief would be against the state officials who issued the detainer.  Therefore, the Court will dismiss this claim for failure to state a claim.

D.  Denial of Disciplinary Due Process Claims

Next, Thornton alleges that he was denied procedural due process during his disciplinary proceedings in 2003 and 2005. Namely, Thornton states that he was not allowed to make corrections to his statements that allegedly contained many inaccuracies and falsehoods, that he was denied the opportunity to review evidence or present witnesses, and that he was denied his request for an administrative remedy form to appeal his 2005 disciplinary action.

The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. Const. amend. XIV.  In Wolff v. McDonnell, 418 U.S. 539 (1974), the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be

25

unduly hazardous to institutional safety or correctional goals."
Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an
inmate representative in some cases, and a written decision by
the factfinder as to evidence relied upon and findings.  See Von
Kahl, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994)(citing Wolff, 418
U.S. at 563-72).  However, in Wolff, the Supreme Court held that,
while prisoners retain certain basic constitutional rights,
including procedural due process protections, prison disciplinary
hearings are not part of criminal prosecution, and an inmate's
rights at such hearings may be curtailed by the demands and
realities of the prison environment.  Id. at 556-57; Young v.
Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

       The Bureau of Prisons ("BOP") has specific guidelines for
inmate disciplinary procedures, which are codified at 28 C.F.R. §
541.10, et seq.  Prohibited acts are categorized according to the
severity of the conduct.  Code Level 100s are deemed the
"Greatest", code level 200s as "High", and proceeding to 400
level codes as "Low Moderate."  The Prohibited Acts Code and
Disciplinary Severity Scale is set forth at 28 C.F.R. § 541.13
Tables 3-5.  Incident reports are prepared in accordance with
§ 541.14 and are referred to the UDC for an initial hearing
pursuant to § 541.15.

       The UDC hearing is typically conducted within three working
days of the incident, but may be extended for good cause pursuant

to § 541.15(b) and (k).  The UDC may refer the matter to the DHO
for further proceedings pursuant to § 541.15(f).

DHO hearing procedures are set forth at § 541.17.  These
procedures require the following: (a) 24-hour advance written
notice of charge before inmate's initial appearance before the
DHO; this right may be waived, § 541.17(a); (b) an inmate shall
be provided a staff representative at the DHO hearing, if so
desired, § 541.17(b); (c) an inmate is entitled to make a
statement and to present documentary evidence at the DHO hearing;
the inmate may also call witnesses to testify on his behalf, but
may not himself question the witnesses, § 541.17(c); (d) the
inmate is entitled to be present throughout the hearing, except
during a period of deliberation or when institutional security
would be jeopardized, § 541.17(d).  The DHO shall prepare a
record of the proceedings that documents the advisement of the
inmate's rights, the DHO's findings, the DHO's decision, the
specific evidence relied upon by the DHO, and a brief statement
of the reasons for imposition of sanctions.  28 C.F.R. §
541.17(g).  A written copy of the DHO's decision and disposition
must be provided to the inmate ordinarily within 10 days.  Id.

These procedures are intended to meet or exceed the due
process requirements prescribed by Wolff.  See Von Kahl, 855 F.
Supp. at 1418.

27

Here, Thornton asserts that he was denied his right to call witnesses or review evidence, that officers taking his statements allowed many inaccuracies to stand without plaintiff's corrections, and that he was not given an administrative remedy form to appeal the 2005 disciplinary finding.  These allegations, if true, may be sufficient to show that plaintiff may have been denied procedural due process during his disciplinary hearings, but the Court finds that any such claim with respect to the October 2003 disciplinary proceedings is now time-barred, and will be dismissed accordingly.

However, as to the September 2005 disciplinary proceeding, the Court is constrained to allow plaintiff's claim to proceed at this preliminary stage.[8]

---

[8]  Nevertheless, to the extent that plaintiff may be asserting a claim that he was falsely charged with disciplinary infractions he did not commit, such claim is subject to dismissal.  The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  See Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988); Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff, 418 U.S. at 558, then the prisoner has not suffered a constitutional violation).  See also Creter v. Arvonio, No. 92-4493, 1993 WL 306425, at *7 (D.N.J. Aug. 5, 1993); Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

E.  <u>September 12, 2005 Sexual Harassment Claim</u>

     Thornton also alleges a claim of harassment, including sexual touching, during an incident occurring on September 12, 2005.  This claim is directed against defendants Donahue and Lt. Hunter.  Thornton claims that defendants threatened and sexually harassed him while they conducted a pat down search of plaintiff for contraband as he was exiting the Food Service Facility. Specifically, defendants grabbed plaintiff's buttocks in an "offensive and inappropriate manner," and told plaintiff to "shut up" or he would be taken to SHU.  The Court construes these allegations as asserting an Eighth Amendment claim of sexual harassment.

     "Because allegations of sexual abuse by a corrections officer may constitute serious harm inflicted by an officer with a sufficiently culpable state of mind, allegations of such abuse are cognizable as Eighth Amendment claims."  <u>Boddie v. Schnieder</u>, 105 F.3d 857, 861 (2d Cir. 1997).  "Unsolicited sexual touching, harassment, and coercion are 'simply not part of the penalty that criminal offenders pay for their offenses against society.'" <u>Thomas v. District of Columbia</u>, 887 F. Supp. 1, 4 (D.D.C. 1995) (quoting <u>Farmer</u>, 511 U.S. at 834).  Severe or repetitive sexual abuse of an inmate by a prison official can be "objectively, sufficiently serious" to constitute an Eighth Amendment violation.  <u>Boddie</u>, 105 F.3d at 861.  Further, "because the

sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." Freitas v. Ault, 109 F.3d 1335, 1338 (8th Cir.1997) (internal quotation marks omitted). However, allegations of isolated incidents of sexual comments or non-consensual touching may not be "objectively, sufficiently serious" to show harm of federal constitutional proportions. Boddie, 105 F.3d at 861.

In this case, Thornton alleges that defendants Donahue and Hunter grabbed his buttocks during a pat down search on September 12, 2005. Thus, this isolated incident is the sole basis of plaintiff's sexual harassment claim. These allegations, even if true, do not rise to the level of a constitutional deprivation. Thornton does not allege that he was subjected to severe or repetitive sexual abuse, touching or harassment; rather, he alleges only one isolated incident. See Boddie, 105 F.3d at 861 ("severe or repetitive sexual abuse of an inmate by a prison officer can be 'objectively sufficiently serious' enough to constitute an Eighth Amendment violation"); Thomas, 887 F. Supp. at 4 ("Sexual assault, coercion and harassment of the sort alleged by plaintiff violate contemporary standards of decency and can cause severe physical and psychological harm").

30

Moreover, the isolated incident was a pat down search conducted as plaintiff was leaving the food service area to check for contraband, a legitimate administrative or security concern, and not punishment.  Finally, Thornton cannot obtain relief solely for mental or emotional injury in the absence of a physical injury.  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."[9]  42 U.S.C. § 1997e(e).  See Allah v. Al-Hafeez, 226 F.3d 247, 250-51 (3d Cir. 2000).  Thus, Section 1997e(e) bars prisoner claims for damages based purely on mental and emotional distress.  Heiseler v. Kralik, 981 F. Supp. 830, 837 n. 3 (S.D.N.Y. 1997), aff'd, 164 F.3d 618 (2d Cir. 1998).  Therefore, the Court concludes that this claim against defendants, Donahue and Hunter should be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

---

[9]    Section 1997e(e) does not define "physical injury." Courts that have attempted to determine whether a prisoner has suffered the requisite "physical injury" have turned to the Eighth Amendment standard which "excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997); Marrie v. Nickels, 70 F. Supp. 2d 1252, 1264 (D. Kan. 1999).  In other words, the physical injury must be more than de minimis, but need not be significant.

31

F.  Retaliation Claim

Finally, Thornton alleges that, on or about March 18, 2006, defendant Riser harassed and threatened plaintiff in retaliation for plaintiff filing administrative remedies against Riser, Donahue, Hunter, and others.  Thornton does not provide any factual allegations as to specific retaliatory acts.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of rights secured by the Constitution ... ."  White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990).  To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

Here, Thornton makes a bald allegation of retaliation by defendant Riser, but does not indicate what adverse action Riser

took against him.  He simply alleges that Riser retaliated

against plaintiff for filing grievances.  Further, it is plain

from the Complaint that Thornton was not actually deterred from

seeking redress through the administrative process in prison, and

now in federal court by filing this Complaint.  However, threats,

the use of disciplinary action to suppress plaintiff's right to

complain, and isolation (as in detention or administrative

segregation) may suggest impermissible retaliatory action in

violation of plaintiff's First Amendment rights.  Because

Thornton alleges that he was harassed and threatened by Riser for

filing grievances, a protected First Amendment activity, these

allegations, if true, may be sufficient at this early juncture to

allow this claim to proceed against defendant Riser.

G.  Plaintiff's Motion for Appointment of Counsel

Thornton also filed a motion for appointment of counsel,

which the Court will deny without prejudice at this time.[10]

Indigent persons raising civil rights claims have no absolute

constitutional right to counsel.  Parham v. Johnson, 126 F.3d

---

[10]   In addition, Thornton filed a motion to amend his
Complaint to add documents pertaining to all of his claims, a
request for production of documents and interrogatories.  The
Court will deny these applications at this time because they
involve and/or seek information regarding claims and defendants
which this Court has determined should be dismissed from this
action, either as time-barred or for failure to state a claim.
Plaintiff may file a renewed request for production of documents,
interrogatories and a motion to amend his Complaint, pursuant to
the Federal Rules of Civil Procedure, pertinent to the remaining
claims and defendants in this action.

454, 456-57 (3d Cir. 1997).  In determining whether to appoint

counsel, a court should consider several factors:

> As a preliminary matter, the plaintiff's claim must
> have some merit in fact and law. ... If the district
> court determines that the plaintiff's claim has some
> merit, then the district court should consider the
> following factors:
>
>> (1) the plaintiff's ability to present his or her
> own case;
>> (2) the complexity of the legal issues;
>> (3) the degree to which factual investigation will
> be necessary and the ability of the plaintiff to pursue
> such investigation;
>> (4) the amount a case is likely to turn on
> credibility determinations;
>> (5) whether the case will require the testimony of
> expert witnesses;
>> (6) whether the plaintiff can attain and afford
> counsel on his own behalf.
>
> [Tabron v. Grace, 6 F.3d 147, 155-56, 157 n.5 (3d Cir.
> 1993), cert. denied, 510 U.S. 1196 (1994).]  This list
> of factors is not exhaustive, but instead should serve
> as a guide post for the district courts.
>
> Correspondingly, courts should exercise care in
> appointing counsel because volunteer lawyer time is a
> precious commodity and should not be wasted on
> frivolous cases.  Id. at 157.

Parham, 126 F.3d at 457-58.

Applying these factors to this case, the Court is not

inclined to allow appointment of counsel at this time.  The only

claims allowed to proceed at this time involve a denial of due

process claim and a retaliation claim.  Neither claim involves

complex issues of law or fact, and it is unlikely that there will

be a need for extensive investigation and discovery for plaintiff

34

to prepare and present his case for trial.  Plaintiff also
appears to be articulate and demonstrates an understanding of the
legal issues and ability to prepare documents and present his
case coherently.  Finally, expert testimony is not essential to
plaintiff's ability to present his case, and it is not apparent
at this time that the case will necessarily rest on credibility
determinations that would necessitate appointment of counsel.
Thus, the only factor weighing in favor of appointment of counsel
is plaintiff's indigency.  Given the balance of factors against
appointment of counsel, the Court will deny plaintiff's
application for appointment of counsel without prejudice to him
renewing such application at a later time if the circumstance in
this case so warrant.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's claim asserting
excessive force and sexual assault in violation of the Eighth
Amendment, arising from an incident occurring on September 2,
2003, will be dismissed as time-barred.  Likewise, plaintiff's
Eighth Amendment claims of (1) verbal harassment on August 10,
2003, (2) denial of medical care regarding the incident on
September 2, 2003, and (3) conditions of confinement in the SHU
during September 2003 will be dismissed as time-barred.  Next,
plaintiff's Fifth Amendment claim against defendants regarding
the state court detainer lodged against him affecting his

classification level and admittance to prison programs will be dismissed for failure to state a claim upon which relief may be granted.  Plaintiff's Fifth Amendment due process claim asserting denial of procedural due process during disciplinary proceedings in October 2003 will be dismissed as time-barred; however, the same claim regarding denial of procedural due process during disciplinary proceedings in September 2005 will be allowed to proceed at this time.  Finally, plaintiff's Eighth Amendment sexual harassment claim will be dismissed for failure to state a claim, but his First Amendment retaliation claim will be allowed to proceed at this time.  Plaintiff's motion to amend his Complaint, request for production of documents, interrogatories, and motion for appointment of counsel (Docket Entry No. 3, filed November 9, 2006), will be denied without prejudice at this time. An appropriate order follows.


                                        s/Robert B. Kugler
                                        ROBERT B. KUGLER
                                        United States District Judge
Dated: February 5, 2007